IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JUL 31 2019

| | |
|---|---|
| Andre Baseem Blakes,<br>    Petitioner, | )<br>)<br>) |
| v. | )     1:18cv1257 (AJT/TCB) |
| | ) |
| Harold W. Clarke,<br>    Respondent. | )<br>)<br>) |

## MEMORANDUM OPINION

Andre Baseem Blakes, a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming that his trial and conviction were plagued by reversible error and that he was denied effective assistance of counsel. On November 8, 2018, respondent filed a Motion to Dismiss and Rule 5 Answer, supported by a legal brief and documentary exhibits. Dkt. Nos. 6-8. Petitioner later filed a traverse. Dkt. No. 15. For the reasons outlined below, respondent's Motion to Dismiss will be granted, and the underlying petition for writ of habeas corpus will be dismissed.

### I. Background

On June 25, 2015, in the Circuit Court for the City of Norfolk, a jury found petitioner guilty of possession of heroin with intent to distribute, third or subsequent offense, and trespassing.[1] Case Nos. CR13001598-03 and -04; Resp. Ex. 1. On September 17, 2015, the Circuit Court imposed upon petitioner a sentence of fifteen years, twelve months incarceration. Case Nos. CR13001598-03 and -04; Resp. Ex. 2.

Petitioner appealed his conviction of possession with intent to distribute to the Court of Appeals of Virginia, arguing that the evidence presented at trial was insufficient to establish that

---

[1] The relevant statutes under which petitioner was charged are Virginia Code § 18.2-248 and § 18.2-119, respectively.

he intended to distribute narcotics. Record No. 1604-15-1. The Court of Appeals denied petitioner's appeal through a per curiam order which entered March 26, 2016. Id. Petitioner then appealed to the Supreme Court of Virginia, which, on November 28, 2016, also refused the appeal. Record. No. 160491.

After unsuccessfully pursuing direct appeals, petitioner filed in the Supreme Court of Virginia a timely petition for writ of habeas corpus, arguing the following:

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HE FAILED TO:

a)  Make timely and necessary objections during suppression hearing and during trial;

b)  Challenge admissibility of alleged statements attributed to petitioner by Investigator[] Dierks, as violative of Miranda or the propriety of relating such information to the jury;

c)  Challenge or object to the Commonwealth Attorney, Ufkes, knowingly and intentionally misrepresenting documentary evidence and presenting perjured testimonial evidence to the jury;

d)  Disallow Dierks from committing fraud upon the court;

e)  Use documentary evidence presented by the Commonwealth to impeach testimony of Dierks;

f)  Raise an adequate adversarial defense to test the case of the Commonwealth.

Record No. 170957. Respondent filed a motion to dismiss the state habeas petition, and, on February 20, 2018, the Supreme Court of Virginia granted that motion. Id. The state court held that claims A and B failed to satisfy the performance prong of Strickland v. Washington, 466 U.S. 668, 687 (1984), and that claims C, D, E, and F satisfied neither the performance nor prejudice prongs of the same test. Id. The Supreme Court of Virginia came to these conclusions without ordering an evidentiary hearing. Id.

2

On August 27, 2018, petitioner timely executed the § 2254 petition currently under review. Dkt. No. 1. He raises the following claims:

I. The trial court erred in denying petitioner's motion to strike in that the evidence was insufficient to support a finding that petitioner possessed heroin recovered by officers during the encounter with petitioner on February 22, 2013 with the intent to distribute.

II. Petitioner contends that trial counsel's representation fell below an objective standard of reasonableness for the following reasons:

    a) Failure to make timely and necessary objections during suppression hearing in regards to Dierks, whose testimony was vital to Commonwealth's attempt to establish intent, which is essential to obtaining a conviction of possession with intent to distribute heroin, not being subpoenaed to pre-trial suppression hearing, nor did he subpoena Dierks himself, and during trial in regards to testimony of Dierks and actions of Commonwealth's Attorney;

    b) Failure to challenge admissibility of alleged statements attributed to petitioner by Dierks, as violative of Miranda or the propriety of relating such information to the jury;

    c) Failure to challenge or object to Commonwealth's Attorney knowingly and intentionally misrepresenting documentary evidence and presenting perjured testimonial evidence to the jury;

    d) Failure to raise an adequate adversarial defense to subject the Commonwealth's case to meaningful adversarial testing, to hold Commonwealth to it's [sic] heavy burden of proof beyond a reasonable doubt the essential elements necessary to support a conviction of possession with intent to distribute heroin under Virginia Law.

Id.

## II. Standard of Review

To obtain federal habeas relief, a state prisoner must demonstrate that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits a federal court's authority to grant habeas relief. Pursuant to AEDPA, when a state court has

addressed the merits of a claim raised in a subsequent federal habeas corpus petition, the reviewing federal court may not grant the petition on that particular claim unless the state court's adjudication was (1) contrary to or an unreasonable application of clearly established federal law or (2) was based on an unreasonable determination of the facts presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)-(2).[2] The question, then, "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based upon an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination is "contrary to" federal law if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. A federal court should grant relief under the "unreasonable application" clause if it finds that the state court "identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

In determining whether a state court's decision was based on an unreasonable determination of the facts unearthed at its own proceeding, a federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)). "The Supreme Court has found state factual findings unreasonable under § 2254(d)(2) when the direction of the evidence, viewed

---

[2] Where a state court's adjudication is not rendered "on the merits," its decision is not entitled to the deferential review standard set out in § 2254(d).

4

cumulatively, was 'too powerful to conclude anything but [the petitioner's factual claim],' and when a state court's finding was 'clearly erroneous.'" Landers v. Warden, Atty. Gen. of Ala., 776 F.3d 1288, 1294 (11th Cir. 2015) (quoting Miller–El, 545 U.S. at 265).

### III. Analysis

#### A. Claim I – Sufficiency of the Evidence

Petitioner claims that the evidence presented at trial was insufficient to prove his guilt beyond a reasonable doubt not as to his possession of narcotics, but as to his intent to distribute them. Dkt. No. 1. He states that the evidence sufficed to show that petitioner possessed "only a small user-quantity of heroin, paraphernalia for consumption only (the capsules themselves), and $809 in currency." Id. He further argues that a prosecution witness's expert opinion that the physical evidence was inconsistent with personal use (as opposed to distribution) was "based on a slim, if not non-existent, factual predicate." Id.

Federal habeas petitions that assert there was insufficient evidence to support a state court conviction should be granted only if "no rational trier of fact could have found proof of [petitioner's] guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979). A federal court may only overturn a state court decision if that decision was "objectively unreasonable;" it may not overturn the decision simply because it disagrees with the outcome. Cavazos v. Smith, 565 U.S. 1, 3 (2011) (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)). Indeed, a reviewing court must ask whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (citing Johnson v. Louisiana, 406 U.S. 356, 362 (1972)).

On direct appeal, the Court of Appeals of Virginia denied petitioner's claim regarding the sufficiency of the evidence. In pertinent part, it wrote:

> [Petitioner] claims the Commonwealth did not establish that he intended to
> distribute the drugs. Specifically, he maintains that he provided a plausible
> explanation for the amount of cash in his possession. However, the jury was
> entitled to accept the Commonwealth's evidence and reject [the defense
> witness's] testimony. "The credibility of the witnesses and the weight accorded
> the evidence are matters solely for the fact finder who has the opportunity to see
> and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va.
> App. 133, 138, 455 S.E.2d 730, 732 (1995).
>
>> Absent a direct admission by the defendant, intent to distribute
>> must necessarily be proved by circumstantial evidence. *See
>> Hunter v. Commonwealth*, 213 Va. 569, 570, 193 S.E.2d 779, 780
>> (1973). Virginia courts have considered a number of factors when
>> determining if an intent to distribute exists: 1) packaging ... 2)
>> quantity ... 3) presence or absence of drug paraphernalia for
>> personal use ... 4) expert testimony ... 5) a large amount of
>> money ... and 6) paraphernalia consistent with distribution. ...
>>
>> In this instance, the expert testimony was that [Blakes's]
>> possession of the quantity of heroin capsules, as well as the
>> currency, was inconsistent with possession for personal use. In
>> addition, [Blakes] told the police that he did not use narcotics, thus
>> negating a claim that he possessed the drugs for his own use.
>> Considering all the facts and circumstances, the evidence was
>> sufficient to prove beyond a reasonable doubt that [Blakes] had the
>> intent to distribute drugs and that he was guilty of the charged
>> offense.

Record. No. 1604-15-1.

A review of the evidence and Virginia state law makes clear that the state court's decision was neither factually nor legally unreasonable. The Commonwealth introduced physical evidence in the form of narcotics and money as well as expert testimony related to those items. The Commonwealth's expert testified that petitioner's possession of heroin capsules and $809 in small-denomination bills was inconsistent with personal use of narcotics. Presented with such information, the jury did not act unreasonably in convicting petitioner of possession with intent to distribute. Nor did the Virginia Court of Appeals act unreasonably in upholding that conviction. Accordingly, Claim I will be dismissed.

## B. Claim II – Ineffective Assistance of Counsel

Petitioner asserts that his trial counsel provided constitutionally ineffective assistance. He further asserts that the Supreme Court of Virginia's denial of this claim is not entitled to deferential review and that petitioner should instead be afforded an evidentiary hearing to determine the validity of his claims.

### 1. 28 U.S.C. § 2254(d) and Adjudications on the Merits

The highly deferential standard set out in 28 U.S.C. § 2254(d) applies only when a state court adjudicates a petitioner's claims "on the merits." 28 U.S.C. § 2254(d). Petitioner appears to argue that the state court's denial of his ineffective assistance claims was not an "adjudication on the merits" and that it is therefore not entitled to deferential review by this Court. He specifically argues that the record upon which the Supreme Court of Virginia denied petitioner's ineffective assistance claims was materially incomplete because the state court failed to order an evidentiary hearing to determine trial counsel's motivation for taking—or failing to take— certain actions during and before trial.

"Whether a claim has been adjudicated on the merits is a case-specific inquiry," Winston v. Pearson, 683 F.3d 489, 496 (4th Cir. 2012), but "[a] claim is not adjudicated on the merits when the state court makes its decision on a materially incomplete record," Gordon v. Braxton 780 F.3d 196, 202 (4th Cir. 2015) (internal quotations omitted). "A record may be materially incomplete when a state court unreasonably refuses to permit "further development of the facts" of a claim." Id. (quoting Winston, 683 F.3d at 496).

Here, the state court did not act unreasonably in failing to order an evidentiary hearing. Petitioner repeatedly argues that an evidentiary hearing was necessary to determine trial counsel's subjective motivation for taking or not taking certain actions. He claims that this information is determinative as to whether counsel provided constitutionally sound assistance. Petitioner is incorrect. "Strickland . . . calls for an inquiry into the *objective* reasonableness of

7

counsel's performance, not counsel's *subjective* state of mind." Harrington v. Richter, 562 U.S. 86, 110 (2011) (emphasis added). See also Roe v. Flores-Ortega, 528 U.S. 470, 481 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."); Allen v. United States, 829 F.3d 965 (8th Cir. 2016) (rejecting argument that an evidentiary hearing was necessary to determine counsel's subjective reason for failing to object to jury procedure where conduct was objectively reasonable under the law).

Where petitioner failed adequately to allege grounds suggesting that counsel's behavior fell below objectively reasonable standards, no factual development was necessary, and denying petitioner's request for an evidentiary hearing was not unreasonable. Contrary to petitioner's claims, then, the state court did not render its decision on an incomplete factual record; its adjudication was "on the merits" for the purposes of 28 U.S.C. § 2254(d). On this basis, the state court's conclusions must remain undisturbed unless they were contrary to or an unreasonable application of federal law or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1)-(2).[3]

### 2. Ineffective Assistance of Counsel Standard

To succeed upon an ineffective assistance claim, a petitioner must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687. To satisfy the deficient performance prong, the convicted defendant must overcome the "strong presumption that counsel's strategy and tactics fall within the wide range of reasonable professional assistance." Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (internal quotations omitted). The prejudice component requires a petitioner to

---

[3] And because "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," Cullen v. Pinholster, 563 U.S. 170, 181 (2011), petitioner is not entitled to an evidentiary hearing in this Court and instead "must overcome the limitation of § 2254(d)(1) on the record that was before the state court." Id. at 185.

"show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland at 694.

"Surmounting Strickland's high bar is never an easy task," Padilla v. Kentucky, 559 U.S. 356, 371 (2010), and "[e]stablishing that a state court's application of Strickland was unreasonable [or contrary to clearly established federal law] under § 2254(d) is all the more difficult." Richter, 562 U.S. at 105. Application of these two layers of deference effectively limits a federal court's review to a determination of "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

3. **Claim II(a) & (b)**[4]

Petitioner claims that counsel was ineffective in that he (a) failed "to make timely and necessary objections during suppression hearing in regards to Dierks, whose testimony was vital to [the] Commonwealth's attempt to establish intent, which is essential to obtaining a conviction of possession with intent to distribute heroin, not being subpoenaed to pre-trial suppression hearing, nor did he subpoena Dierks himself, and during trial in regards to testimony of Dierks and actions of Commonwealth's Attorney;" and (b) in that he failed "to challenge admissibility of alleged statements attributed to petitioner by Dierks, as violative of Miranda or the propriety of relating such information to the jury." Dkt. No. 1.

The Supreme Court of Virginia dismissed these claims on the basis that they did not satisfy the performance prong set out in Strickland.

> [P]etitioner contends he was denied the effective assistance of counsel because counsel did not challenge the admissibility of petitioner's statements to police, either during a suppression hearing or at trial. Petitioner explains counsel should have argued petitioner's statements to Detective A.J. Dierks following his arrest were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). Dierks testified at petitioner's trial that petitioner told him he did not use heroin or other drugs and that petitioner claimed he had worked at a junk yard for several years

---

[4] Claims II(a) & (b) are substantially similar to petitioner's state habeas claims (a) and (b).

9

but could not provide a location or a phone number for the business. Dierks used these statements to support his opinion when testifying as an expert in narcotics distribution that petitioner's suspected possession of heroin was inconsistent with his being a user of the drug. Dierks claimed petitioner made these statements after he was informed of his *Miranda* rights and that petitioner never indicated an unwillingness to speak with him.

Petitioner alleges that, contrary to Dierks' trial testimony, he did not willingly speak with Dierks after Dierks advised him of his rights. In a supporting affidavit, petitioner describes being in jail following his arrest and that Dierks took him to an interrogation room. There, petitioner told Dierks he had nothing to say to him, and Dierks responded he would nonetheless read petitioner his rights. Petitioner retorted, "ok, whatever, but I still have nothing to say." Dierks then produced a "Legal Rights Advice Form" ("LRAF") that advised petitioner of his *Miranda* rights, asked petitioner whether he understood each right, and then asked petitioner whether he waived those rights and desired to make a statement. Petitioner wrote "yes" and his initials under each right he was advised of but he wrote "no" under where the form read, "I further state that I waive these rights and desire to make a statement." Petitioner avers that, consistent with his final response on the LRAF, he never said anything to Dierks other than refusing to make a statement.

Petitioner alleges he informed counsel prior to and during trial that he did not waive his *Miranda* rights nor did he say anything to Dierks beyond informing Dierks he did not wish to talk. Petitioner claims that, despite this information and petitioner's responses on the LRAF, counsel did not challenge the admissibility of Dierks' fraudulent account of petitioner's statements. Petitioner contends that, had counsel done so, Dierks would have not have been able to testify at petitioner's trial and provide the only evidence suggesting petitioner intended to distribute heroin. Petitioner adds that counsel's omissions also waived viable appellate claims and that prejudice to the outcome of petitioner's trial should be presumed.

The Court holds [these claims] fail to satisfy the "performance" prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, petitioner has failed to establish counsel unreasonably declined to file a pre-trial motion to suppress Dierks' prospective testimony. Petitioner does not claim simply that Dierks failed to respect his clear invocation of his right to remain silent by continuing to question him. *See Midkiff v. Commonwealth*, 250 Va. 262, 267, S.E.2d 112, 115 (1995). Instead, petitioner contends counsel should have challenged the admissibility of his statements on the theory Dierks fabricated that petitioner made any statements at all and their content. As evidence of such egregious, deliberate wrongdoing, petitioner cites only the LRAF and his account of his interaction with Dierks. On such evidence, counsel could have reasonably determined he had only a slim chance of meeting the high bar of proving Dierks,

an experienced police officer, intentionally lied about the statements petitioner made.

Counsel could have weighed this low chance of success against the time and resources necessary to pursue the claim, the possible rewards, and the possible consequences. *See United States v. Mason*, 774 F.3d 824, 830 (4th Cir. 2014) ("Indeed, it can be positively detrimental to a client's chances not to set priorities but rather to scattershot the case by raising every objection at trial and pressing every imaginable contention on appeal."). If counsel prevailed, he would have excluded only petitioner's tangentially incriminating statements and, possibly, Dierks' expert opinion. Untouched, however, would have been the other evidence inculpating petitioner. The record, including the trial transcript, demonstrates the evidence included that petitioner fled from officers, may have discarded heroin during that flight, and was carrying $809 in cash at the time, mostly in small denomination bills. Accordingly, attacking solely the admissibility of petitioner's alleged statements would have done little to advance counsel's strategy of defending petitioner on the theory that petitioner possessed no heroin, which, as explained further below, was reasonable under the circumstances.

If, however, counsel faltered during the pre-trial suppression attempt petitioner proposes, he and petitioner would have faced the rest of the trial proceedings having unsuccessfully accused Dierks of fabricating evidence. Counsel could have judged that the collateral consequences of that failure might ultimately work to petitioner's detriment. *See United States v. Rushin*, 642 F.3d 1299, 1308 (10th Cir. 2011) ("In formulating a defense strategy, counsel is entitled ... to critically undertake a cost/benefit analysis of any proposed course of action."). For example, counsel could have been rightly concerned that any accusations he or petitioner made regarding Dierks' and petitioner's interactions might be used to impeach petitioner should he testify at trial. *See Hall v. Commonwealth*, 16 Va. App. 779, 781-84, 433 S.E.2d 489, 491-93 (1993) (collecting cases and holding a defendant's and his counsel's statements or representations in connection with a pre-trial suppression motion can be used to impeach the defendant's testimony at trial); *see also United States v. Phillipos*, 866 F.3d 62, 66 n.4 (1st Cir. 2017) (Thompson, J. dissenting from the denial of rehearing en banc) (collecting cases and opining that "[a] defendant's decision to take the stand at a suppression hearing is not one that should be undertaken lightly [because] ... such pretrial testimony can be used to impeach a defendant's testimony at trial"); *Reinert v. Larkins*, 379 F.3d 76, 96 n.5 (3d Cir. 2004) (noting that counsel might reasonably judge it risky for his client to testify during a suppression hearing for fear that testimony could be used to impeach his client at trial).

With these considerations in mind, counsel's decision to focus his pre-trial efforts on suppressing all of the evidence against petitioner was reasonable. The record, including the transcripts of petitioner's pre-trial suppression hearing and trial, demonstrates counsel moved to suppress all of the evidence inculpating petitioner in the possession or intended distribution of heroin on the ground that petitioner

was seized in violation of the Fourth Amendment. Petitioner does not contend this claim was weak or ill-supported. *See Harrington v. Richter*, 562 U.S. 86, 107 (2011) ("Counsel [i]s entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies."). By contrast, counsel could have reasonably determined petitioner's allegation of an unscrupulous detective was a "long-shot" and unlikely to bear fruit. *See Mason*, 774 F.3d at 828-31 (counsel may reasonably choose between which pre-trial issues to pursue and, in doing so, is not ineffective for "failing to bring novel or long-shot contentions").

Further, counsel reasonably declined to challenge the admissibility of petitioner's statements at trial. The record, including the trial transcript, demonstrates that, at trial, Dierks recalled informing petitioner of his *Miranda* rights, that petitioner unambiguously agreed to speak with him, and that petitioner disclaimed using a number of drugs, including heroin. Dierks also recalled that petitioner said he had been employed for five years at a junk yard but that petitioner could not provide a location or phone number for the business. Dierks also authenticated the LRAF, which was admitted with a separate form indicating petitioner refused to provide Dierks with a written statement.

On cross-examination, counsel questioned Dierks regarding petitioner's writing "No" under where the LRAF offered for him to waive his rights and make a statement. Dierks explained he had "Mirandized" petitioner twice, the first time was orally when Dierks first encountered petitioner. According the [sic] Dierks, petitioner then made his statements after which Dierks attempted unsuccessfully to have petitioner reduce them to writing. Petitioner did not testify in his own defense, nor does he claim he would have under different circumstances, and no other evidence contradicted Dierks' account of his interview with petitioner. In light of such, counsel could have reasonably determined it would be futile to challenge the admissibility of Dierks' testimony mid-trial. *See Brownlee v. Haley*, 306 F.3d 1043, 1061 (11th Cir. 2002) (counsel's decision not to pursue a defense "after deeming it implausible and unlikely to succeed is precisely the kind of strategic decision on which a court should defer to the judgment of counsel"). Thus, petitioner has failed to demonstrate that counsel's performance was deficient.

Record No. 170957.

In the context of a § 2254 petition, "[j]udicial scrutiny of counsel's performance must be highly deferential," and a reviewing court must remember that counsel is "permitted to determine trial strategy, and press those claims with the greatest chance of success." Strickland at 689; United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014). As noted in the Supreme Court of Virginia's dismissal, deciding to challenge the admissibility of petitioner's statements to police

12

would have presented risks. For example, theories or testimony proffered by petitioner at a suppression hearing could later have been used to impeach petitioner. Avoiding such a scenario very well could have represented a strategic decision. See Reinert v. Larkins, 379 F.3d 76, 96 n.5 (3d Cir. 2004). And even if counsel's failure to pursue the strategies petitioner now highlights was inadvertent, this does not per se constitute ineffective assistance. Indeed, "[c]ounsel is not ineffective merely because he overlooks one strategy while vigilantly pursuing another." Williams v. Kelly, 816 F.2d 939, 950 (4th Cir. 1987) (citing Strickland at 689). The state court's decision to dismiss petitioner's claims was therefore neither factually nor legally unreasonable. Claims II(a) and II(b) will be dismissed.

4.   **Claim II(c)**[5]

Petitioner next argues that trial counsel was ineffective in that he failed "to challenge or object to Commonwealth's Attorney knowingly and intentionally misrepresenting documentary evidence and presenting perjured testimonial evidence to the jury." Dkt. No. 1. The Supreme Court of Virginia dismissed this theory, holding that it satisfied neither prong of the two-part Strickland test.

> In [these claims], petitioner contends he was denied the effective assistance of counsel because counsel did not challenge or object to the Commonwealth's Attorney intentionally misrepresenting documentary evidence and presenting perjured testimony. Petitioner premises this claim on the LRAF and Dierks' alleged false testimony that petitioner waived his right to remain silent. Petitioner contends that exposing the Commonwealth's and Dierks' deception and fraud on the court would have resulted in Dierks' being unable to testify at petitioner's trial and, accordingly, the absence of any evidence petitioner intended to distribute the heroin he possessed. Again, petitioner claims he made counsel aware of Dierks' purported lies.
>
> The Court holds [these claims] satisfy neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. As explained above, the record, including the trial transcript, demonstrates counsel cross-examined Dierks regarding the LRAF's apparent contradiction of Dierks' claim that petitioner freely waived his *Miranda* rights and answered Dierks' questions.

---

[5] Claim II(c) is substantially similar to petitioner's state habeas claims (c) and (d).

13

> Dierks then provided what counsel could have reasonably accepted as a plausible explanation for the discrepancy, despite any protestation by petitioner to the contrary.
>
> More importantly, even if counsel had misgivings about Dierks' explanation, counsel could have reasonably concluded it would be futile to move to strike Dierks' testimony based on a claim that Dierks offered or the Commonwealth countenanced false evidence. See *United States v. Basham*, 789 F.3d 358, 376 (4th Cir. 2015) ("[T]he Due Process Clause obliges the government not [to] knowingly use false evidence, including false testimony, to obtain a tainted conviction."). Petitioner chose not testify [sic] and does not claim he would have if given the opportunity to recount his version of his interaction with Dierks. Absent such testimony and considering Dierks' seemingly innocent explanation for why the LRAF said petitioner did not wish to make a statement, counsel could have determined he would not be able to establish Dierks' testimony was in fact false. See *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987) ("Mere inconsistencies in testimony by the government witnesses do not establish the government's knowing use of false testimony.").
>
> For similar reasons, petitioner has not established the events of his trial might have been different had counsel raised the objections petitioner proposes. There is no reasonable probability that, based on the LRAF and Dierks' testimony alone, the court would have determined the Commonwealth presented intentionally false evidence of that Dierks perjured himself. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

Record. No. 170957.

As noted by the Supreme Court of Virginia, and in contrast to petitioner's argument, the record clearly demonstrates that counsel took efforts to discern the basis for Dierks' apparently inconsistent testimony that petitioner had both made statements to police and indicated on the LRAF that he refused to do so. Indeed, at trial, counsel cross-examined Dierks on the issue. While petitioner understandably would have liked to have seen the testimony excluded, counsel's decision only to cross-examine Dierks on the issue could once more be construed as a legitimate strategic decision. His questioning of Dierks represented one way to introduce the issue to the jury without moving to strike the testimony, a motion that counsel could have seen as futile. See Ohler v. United States, 529 U.S. 753, 764 (2000) (Souter, J. dissenting) ("A factfinder

who appreciates a heightened possibility of perjury will respond with heightened scrutiny"); United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987) ("Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony.").

Petitioner counters, arguing that the Supreme Court of Virginia's determination was based on an unreasonable interpretation of the facts. He states that the state court's proposition that counsel could have determined that he had only a small chance of successfully excluding the relevant testimony is not determinable without conducting an evidentiary hearing to discover counsel's actual thought processes at the time. But petitioner once more misunderstands the deference owed to trial counsel. "Strickland ... calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." Harrington, 562 U.S. at 110. For these reasons, the state court's decision was neither factually nor legally unreasonable, and petitioner's Claim II(c) will be dismissed.

### 5. Claim II(d)[6]

Finally, in Claim II(d), petitioner argues that counsel was ineffective in that he failed "to raise an adequate adversarial defense to subject the Commonwealth's case to meaningful adversarial testing, to hold Commonwealth to it's [sic] heavy burden of proof beyond a reasonable doubt the essential elements necessary to support a conviction of possession with intent to distribute heroin under Virginia law." Dkt. No. 1. The Supreme Court of Virginia found this claim failed to satisfy either prong of the Strickland test.

> In claim (f), petitioner contends he was denied the effective assistance of counsel because counsel did not raise an adequate defense to test the Commonwealth's case. Petitioner argues counsel should have argued petitioner was a user and not a distributor of heroin. Petitioner contends that, instead, counsel defended petitioner on the theory that he never possessed heroin, which was clearly contradicted by the evidence at trial given the testimony of several officers who claimed they saw petitioner discard heroin during their attempt to arrest him.

---

[6] Claim II(d) is substantially similar to petitioner's state habeas claim (f).

> The Court holds [this claim] satisfies neither the "performance" nor the
> "prejudice" prong of the two-part test enunciated in *Strickland*. The record,
> including the trial transcript, demonstrates counsel chose to defend petitioner on
> the theory that insufficient reliable evidence established petitioner possessed the
> heroin officers recovered in the course of petitioner's arrest. Petitioner does not
> claim counsel chose this theory after anything less than complete investigation
> and a full appreciation of the facts, and, thus, the reasonableness of counsel's
> choice is all but unassailable. *See Wiggins v. Smith*, 539 U.S. 510 (2003)
> ("Strategic choices made after thorough investigation of law and facts relevant to
> plausible options are virtually unchallengeable.") (internal quotation marks
> omitted). Having chosen a reasonable theory of defense, counsel was not required
> to argue alternative or inconsistent theories of petitioner's innocence. *See
> Jackson v. Shanks*, 143 F.3d 1313, 1326 (10th Cir. 1998) ("Trial counsel's
> decision not to present inconsistent defense theories does not constitute
> ineffective assistance.").
>
> In any event, counsel could have reasonably determined arguing petitioner was
> merely a user of the heroin was inadvisable because doing so would have
> admitted petitioner had a reason to be in possession of the drug, conduct which,
> standing alone, is a Class 5 felony that carries a maximum ten years'
> imprisonment. Code § 18.2-250(a); Code § 18.2-10(e). Indeed, the
> Commonwealth could have easily secured a jury instruction on that lesser
> included offense, and counsel could have reasonably endeavored to avoid that
> circumstance, opting instead to pursue petitioner's outright acquittal.
>
> Further, petitioner has submitted no evidence beyond his speculation that a
> different or additional argument from counsel would have swayed the jury's
> verdict. Because petitioner did not testify and does not claim he would have had
> counsel pursued a different theory of defense, any contention on counsel's part
> that petitioner was a heroin user would have lacked direct support in the evidence
> and, instead, would have been refuted by petitioner's statement to Dierks that he
> did not use heroin. Thus, petitioner has failed to demonstrate that counsel's
> performance was deficient or that there is a reasonable probability that, but for
> counsel's alleged error, the result of the proceeding would have been different.

Record No. 170957.

Presented with petitioner's petition for writ of habeas corpus, the state court needed to determine not whether counsel should have presented some alternative theory of defense, but whether the course taken was itself reasonable. See Wiggins v. Smith, 539 U.S. 510, 523 (2003). It was. Given the fact that the heroin recovered in this case was not on petitioner's person but was instead physically scattered, counsel's decision to argue that petitioner did not possess the

16

drugs was not unreasonable. The Supreme Court of Virginia's decision was therefore not predicated on an unreasonable determination of the facts of this case. Nor was its decision contrary to existing federal law. Accordingly, petitioner's Claim II(d) will be dismissed.

## IV. Conclusion

For the foregoing reasons, the state court's decision was not contrary to clearly established federal law, nor was its decision based on an unreasonable determination of the facts. Petitioner has not established that counsel's performance was deficient. Accordingly, respondent's Motion to Dismiss shall be granted, and this petition will be dismissed with prejudice through an Order that will issue alongside this Memorandum Opinion.

Entered this 31st day of July 2019.
Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge